IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KIMBERLY PROPST,

    Plaintiff,

  v.

CITY OF EAST POINT, GA,

    Defendant.

CIVIL ACTION FILE NO.

1:24-CV-02075-WMR-JHR

## FINAL REPORT AND RECOMMENDATION

The plaintiff, Kimberly Propst, sues her former employer, the City of East Point, Georgia, alleging retaliation and termination for participating in protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), the First Amendment enforced via 42 U.S.C. § 1983, and the Georgia Whistleblower Act, O.C.G.A. § 45-1-4. (Compl. [1] ¶¶ 59-66 (Count I), 67-71 (Count II), 76-82 (Count IV).)[1] This matter is now before the Court on the

---

[1] The Court has dismissed the plaintiff's Title VII opposition clause claim (including related harassment), Fourteenth Amendment due process clause claim, and all claims against the individual defendant, Rashida Oliver, who is no longer a party. (*See* Order of Nov. 19, 2024 [16], *adopting* R. & R. of Oct. 9, 2024 [12].)

defendant's Motion for Summary Judgment [41] and the plaintiff's Amended Cross-Motion for Summary Judgment [58]. For the reasons explained below, the undersigned **RECOMMENDS** that both Motions be **DENIED** and the plaintiff proceed to trial on her remaining claims.

## I.    STATEMENT OF FACTS

Local Civil Rule 56.1 requires certain filings by the parties in conjunction with a summary judgment motion. *See* N.D. Ga. Civ. R. 56.1(B)(1)-(2). The defendant as movant filed a Statement of Undisputed Material Facts [41-2] ("DSMF"), to which the plaintiff responded [59-1] ("R-DSMF"). However, the plaintiff did not file a statement of additional material facts. *See* N.D. Ga. Civ. R. 56.1(B)(3).

As movant on her Amended Cross-Motion for Summary Judgment, the plaintiff filed an Amended Statement of Undisputed Material Facts ("PSMF") [58-1], to which the defendant submitted a response [65-1] ("R-PSMF"). Finally, as allowed by the Local Rules, the defendant submitted a Statement of Additional Material Facts ("DSAF") [65-2], to which the plaintiff did not respond.

The Court uses the parties' proposed facts and responses as follows. Where one side admits a proposed fact in whole or in part, the Court accepts that fact or the part admitted as undisputed for purposes of this Report and Recommendation

and cites only to the proposed fact.  Where one side denies a proposed fact in whole or in part, the Court reviews the record cited and determines whether the denial is supported and, if it is, whether the dispute is material.  If the denial is without merit and the record citation supports the proposed fact, the Court deems it admitted and includes it.  Given the cross-motions here, a number of proposed facts are duplicative; in those situations, the Court sometimes cites one party's proposed fact and references the other using a "see also" signal.

Rather than stating concise, non-argumentative responses or objections which directly refute the proposed fact at issue and including specific citations to the record, the parties frequently admit the fact in whole or in part while also disputing what it may imply and arguing their position.  Such assertions do not create a genuine fact dispute and are overruled.  Additionally, where the parties' versions of the events differ, the Court includes both perspectives and credits the nonmoving party's version when addressing the merits of its own motion for summary judgment.  *See Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) (when conflicts arise between facts evidenced by the parties, the court credits the nonmoving party's version).

Finally, the Court excludes any proposed fact stated as an issue or legal conclusion,[2] *see* N.D. Ga. Civ. R. 56.1(B)(1)(c), or that is otherwise immaterial, *see id.* 56.1(B)(1).[3]  The Court sometimes modifies a proposed fact per the record cited or the other party's response and also includes facts drawn from its review of the record.[4]  S*ee* Fed. R. Civ. P. 56(c)(3).  As set forth *infra* Part II, the Court considers all proposed facts in light of the summary judgment standards.

**A.     The City of East Point Municipal Government**

The City of East Point operates under a mayor-council form of municipal government with eight councilmembers and a mayor, who serves as the presiding officer of the council but does not cast a vote unless the council is equally divided. (DSMF ¶ 1.)  The chief executive officer of the administrative branch is the city manager.  (*Id.* ¶ 2.)[5]

---

[2] The Court excludes the following proposed facts stated as issues or legal conclusions:  DSMF ¶¶ 15, 30, 32; PSMF ¶¶ 48, 56, 91; DSAF ¶¶ 1-2, 5-6.

[3] The Court excludes the following proposed facts as immaterial for the purpose of ruling on the parties' Motions for Summary Judgment:  DSMF ¶¶ 2 (second part), 6-7, 9, 20-21, 26, 40; PSMF ¶¶ 1-7, 14, 18-19, 23-24, 28, 30-31, 35-36, 39-43, 45, 47, 49-52, 54, 61-62, 68, 76-88, 95-100.

[4] The Court cites the internal page number of depositions, as opposed to those imprinted by CMECF.

[5] The Court excludes the remaining portion of DSMF ¶ 2 as immaterial.

From approximately 2008 to around spring 2018, the chief judge of the municipal court was the council-appointed officer responsible for overseeing the operations of the municipal court, including the administrative staff. (DSMF ¶ 3.) During that time and through the present Rashida Oliver has served as the chief judge. (*Id.* ¶ 4.)

Around spring 2018, the council removed from the chief judge administrative responsibilities and oversight authority and created a court administrator position to oversee the administrative functions of the court, including supervision of the clerks, with the court administrator reporting to the city manager. (DSMF ¶ 5.) The defendant hired the plaintiff to serve as its permanent court administrator beginning around September 2018, and she served in that capacity until her termination on January 30, 2024. (*Id.* ¶ 8.)

**B.      Councilmember Shropshire's Phone Call to the Plaintiff**

On August 28, 2023, around 4:45 p.m., Councilmember Sharon Shropshire called the plaintiff about a fine assessed to her cousin. (DSMF ¶ 10, as modified by R-DSMF ¶ 10; Propst Dep. [39-1] 69-71; *see also* PSMF ¶¶ 8-9.)[6]

---

[6] The defendant's objections to PSMF ¶¶ 12-13 and 15 are sustained because the record citations do not support those proposed facts. *See* N.D. Ga. Civ. R.

The plaintiff testified in her deposition that Councilmember Shropshire demanded to know if she or one of her clerks issued the fine. (Propst Dep. [39-1] 69-70.) The plaintiff explained to her that only a judge could issue a fine and that Chief Judge Oliver presided that day. (*Id.* at 70.) Councilmember Shropshire then called the judge a "bitch," to which the plaintiff responded, "No, no, no, don't do that. Don't do that." (*Id.*) The councilmember then asked if they were still doing "virtual" and the plaintiff responded that they were in the building and that would be something to ask the judge. (*Id.*) Councilmember Shropshire then stated that her family members would be at the council meeting on Monday, would be upset, and would be "38 hot." (*Id.*)[7] In her declaration, the plaintiff adds that Councilmember Shropshire "demanded that the fine be 'fixed' and yelled at me that 'it needs to be corrected today!'" (Propst Am. Decl. [44-8] ¶ 6.) According to the plaintiff, she "refused and informed the councilwoman that she was asking me

56.1(B)(1)(a) ("The Court will not consider any fact . . . not supported by a citation to evidence[.]").

[7] The plaintiff's objection to DSMF ¶ 11 is sustained because the difference between her and the councilmember's version of the phone call "presents the sort of classic [s]he said / she said dispute that cannot be resolved upon summary judgment." *Seo v. Young Hwan, Corp.*, 796 F. Supp. 3d 1292, 1308 (N.D. Ga. 2025) (internal quotation marks and citation omitted). As discussed above, the Court must view the facts in the light most favorable to the plaintiff as the nonmovant with regard to the defendant's Motion for Summary Judgment.

6

to do something illegal and unethical . . . I told her, 'I can't do that because that is illegal for me to do that.'"  (*Id.* ¶ 7 (citing O.C.G.A. § 15-21-134 ("Any person whose duty it is to collect and remit [court fines] who refuses to so remit shall be guilty of a misdemeanor.")).)

Conversely, Councilmember Shropshire testified in her deposition that the following conversation took place during the August 28, 2023 phone call:

> I called her.  I can't remember how the conversation -- I probably said, how you doing.  But I asked her in reference to someone having to go to court, and I gave the name, and I remember saying they were last because, I believe, they went in alphabetical order.  And I said they got a fine, and the family is concerned about the fine.  And I remember saying the family said that – and I believe it was -- let me think.  It might have been a car tag covering.  And I said the family felt or thought that that would have been dropped because they removed it. And I can't remember, because I do know that I said -- because I thought that it was Ms. Propst, and I remember asking about the -- saying -- they mentioned about the fine.  And I said, they said that the court clerk put the fine on, and Ms. Propst said no, it was the judge. And I said, oh, the judge.  I said, you mean a person can't tell the difference from a judge and a court clerk.  I said, hum.  And so we proceeded to have a conversation, and I remember saying, see, this is why we need in-person court, so people would -- can know who the -- so they can know who the difference is in a judge and a city clerk. Not a city clerk, a court clerk.

(Shropshire Dep. [50-1] 53-54; *see also* PSMF 16.)[8]  Additionally, Councilmember Shropshire testified that she did not state that the call was on behalf of her cousin, she was not upset during the call, she did not use the word "bitch" or the phrase "38 hot," and did not demand the ticket be fixed or corrected.  (Shropshire Dep. [50-1] 66-70.)

Directly following the phone call, the plaintiff contacted attorney Rachelle Riley, who served as the defendant's Clerk of Court, and City Attorney Antavius Weems.  (PSMF ¶ 25, as modified by R-PSMF ¶ 25.)  After receiving a text from the plaintiff, Ms. Riley returned to City Hall to find the plaintiff "visibly shaken and very upset" and the plaintiff relayed her version of the phone call.  (PSMF ¶ 26, as modified by R-PSMF ¶ 26; *see also* Riley Decl. [44-11] ¶¶ 5-6.)  Mr. Weems directed the plaintiff to email him a summary of the phone call, which she did at approximately 5:18 p.m., and he forwarded that email to human resources.  (Weems Decl. [44-9] ¶ 6; DSMF ¶ 13; PSMF ¶ 27, as modified by R-PSMF ¶ 27.)  According to the plaintiff, Mr. Weems told her that the alleged request was

---

[8] The defendant's objections to PSMF ¶¶ 10-11, 17, 20-22 are sustained because the Court must view the facts in the light most favorable to the defendant when ruling on the plaintiff's Motion for Summary Judgment and accepts Councilmember Shropshire's version of the phone call for that purpose.

unethical and illegal and that she was right to refuse it. (PSMF ¶ 29, as modified by R-PSMF ¶ 29.)[9]

According to Mr. Weems, he called Chief Judge Oliver and informed her about the phone call by Councilmember Shropshire to plaintiff, including that Councilmember Shropshire wanted the plaintiff to refund her cousin's fine immediately, called Chief Judge Oliver a "bitch," threatened to shut down virtual court, and threatened that her family was "38 hot" and were coming to the next council meeting. (Weems Decl. [44-9] ¶ 7; PSMF ¶ 32, as modified by R-PSMF ¶ 32.)[10] Chief Judge Oliver testified that she did receive a phone call the night of August 28, 2023 from Mr. Weems regarding the councilmember's call to the plaintiff. (Oliver Dep. [47-1] 30.) However, she only recalled Mr. Weems telling her that Councilmember Shropshire called the plaintiff and cussed her out about a case in court. (*Id.* at 31-32.)

According to Mr. Weems, Chief Judge Oliver responded, "I don't really want to get involved with the City Council, but I'm going to call Kim to check on

---

[9] The defendant's materiality objection to PSMF ¶ 29 is overruled.

[10] The plaintiff's objection to DSMF ¶ 12 is sustained. Again, the Court must view the facts in the light most favorable to her when ruling on the defendant's Motion for Summary Judgment, and therefore accepts Mr. Weems's version of the information communicated to Chief Judge Oliver on the night of August 28, 2023.

her." (Weems Decl. [44-9] ¶ 8; PSMF ¶ 33.)[11]  Chief Judge Oliver communicated with the plaintiff via text, stating:  "Weems called me last night and told me about a call you received[.]  That's why I was checking on you[.]"  (Pl.'s Ex. 17 [44-17]; PSMF ¶ 34.)[12]  A few days after the incident, Police Chief Shawn Buchanan contacted the plaintiff about the August 28, 2023 phone call, and stated that he was aware of it and would try to get Councilmember Shropshire to apologize.  (DSMF ¶ 14.)

On September 3 or 4, 2023, Mr. Weems met with Councilmember Shropshire and her attorney over dinner to discuss her phone call to the plaintiff. (Weems Decl. [44-9] ¶ 14.)  Mr. Weems told the Councilmember Shropshire that the phone call violated at least three ordinances and that she had exposed the defendant to substantial liability.  (*Id.*)  According to Mr. Weems, she was unapologetic in her position that she had done nothing wrong.  (*Id.* ¶ 15.)  As they were leaving the meeting, Mr. Weems commented that the matter could have been easily resolved if she apologized to the plaintiff.  (*Id.* ¶ 16.)  According to Mr.

---

[11] The defendant's objection to PSMF ¶ 33 is overruled because the proposed fact is material, the record citation supports it, and the defendant's citations fail to directly refute the proposed fact, as required by Local Rule 56.1(B)(2)(a)(2)(i). (*See* R-PSMF ¶ 33 (citing Oliver Dep. [47-1] 29-38, 150-52).)

[12] The defendant's materiality objection to PSMF ¶ 34 is overruled.

Weems, Councilmember Shropshire replied: "I don't give a f***, she gotta go." (*Id.* ¶ 16 (alteration in original); PSMF ¶ 44.)[13]

Additionally, on September 3 or 4, 2023, Mr. Weems had a Zoom call with Councilmember Shropshire and her attorney. (Shopshire Dep. Ex. 10 [44-21].) In a recording of the meeting, Mr. Weems summarized his recollection of the plaintiff's complaint to him: "that you demanded that they give her her money back . . . you identified yourself as a council member on more than one occasion during that call, which exerted power and influence." (PSMF ¶ 37, as modified by R-PSMF ¶ 37; Shropshire Dep. Ex. 10 [44-21], at 10:29-10:41.)[14] Mr. Weems opined that "the fact that you called and identified yourself as a council member and called about a family member's case is the part that, as your attorney probably already told you, makes it illegal." (PSMF ¶ 38, as modified by R-PSMF ¶ 38; Shropshire Dep. Ex. 10 [44-21], at 11:45-11:54.)

---

[13] The defendant's hearsay and materiality objections are overruled. "[A] district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999) (internal quotation marks and citations omitted). Because Councilmember Shropshire is available to testify, Mr. Weems's statement regarding her comment can be reduced to admissible evidence.

[14] The defendant's materiality objections to PSMF ¶¶ 37-38 are overruled.

### C.    Chief Judge Oliver's Interaction with the City Council

The plaintiff told Chief Judge Oliver that the City Council wanted her to go to their September 5, 2023 meeting to discuss reopening of the court.  (DSMF ¶ 16, as modified by R-DSMF ¶ 16; Oliver Dep. [47-1] 81-82.)[15]  Chief Judge Oliver recounted that discussion in her deposition as follows:  "I told them the same thing that Ms. Propst said, is that the court never closed.  And I said, you know, we had some things that were working that we had needed to bring people back into court that we would still be trying to maintain some virtual as well as in person."  (Oliver Dep. [47-1] 82.)

On October 12, 2023, the City Council conducted performance evaluations of the appointed officers, including Chief Judge Oliver.  (DSMF ¶ 17; PSMF ¶ 70.) During her performance evaluation, the City Council considered the then-existing reporting structure of the court administrator reporting to the city manager as opposed to the chief judge and whether to change it.[16]  (DSMF ¶ 18.)[17]  During the

---

[15] The Court modifies DSMF ¶ 16 to more accurately reflect the record citations.  (*Compare* DSMF ¶ 16, *with* Def.'s Ex. H [41-11], *and* Oliver Dep. [47-1] 81-83.)

[16] The defendant's objections to PSMF ¶¶ 73-74 are sustained because the record citations do not support the proposed facts.

[17] The plaintiff's objection to DSMF ¶ 18 is overruled as argumentative.

evaluation, the City Council also discussed whether to raise Chief Judge Oliver's salary.  (*Id.* ¶ 19; *see also* PSMF ¶ 71, as modified by R-PSMF ¶ 71.)

On October 16, 2023, Chief Judge Oliver emailed the City Council (excluding the plaintiff) research they requested, including examples of municipal courts that have the court administrator report directly to the judge.  (PSMF ¶ 72.)

### D.    The Restructuring

On November 1, 2023, the plaintiff received a City Council agenda for the November 6, 2023 meeting, and was surprised to learn that Councilmember Shropshire added "Court Administration" to the agenda.  (PSMF ¶ 46.)

On the morning of November 6, 2023, the plaintiff spoke with Iris Jessie, the defendant's director of human resources, about how to file an Equal Employment Opportunity Commission complaint.  (Propst Am. Decl. [44-8] ¶ 34.)  Ms. Jessie explained that the plaintiff's EEOC complaint should go directly to the EEOC, not human resources, and the plaintiff told Ms. Jessie that she would follow her instructions by filing an EEOC Complaint.  (PSMF ¶ 57.)[18]  Later that day, the plaintiff emailed Ms. Jessie and Deron King, the city manager, a written

---

[18] The defendant's materiality objections to PSMF ¶¶ 57-60 are overruled as argumentative.

memorandum titled: "Re: Formal EEOC Complaint," which elaborated on the August 28, 2023 phone call, stated that the plaintiff intended to file a formal EEOC complaint, and summarized her concerns of unlawful retaliation. (DSMF ¶ 23, as modified by R-DSMF ¶ 23; PSMF ¶¶ 58-59; Propst Am. Decl. [44-8] ¶ 35; Jessie Dep. [51-1] 32-34 .)[19]

Also on November 6, 2023, the plaintiff submitted an online inquiry with the EEOC and attended an interview with an investigator on January 25, 2024. (PSMF ¶ 60, as modified by R-PSMF ¶ 60.)[20] Chief Judge Oliver testified in her deposition that she had no knowledge of the plaintiff's interactions with the EEOC, either on November 6, 2023 or January 25, 2024. (DSAF ¶¶ 3-4; Oliver Dep. [47-1] 96-97, 100-02, 148.)

During the November 6, 2023 meeting, the City Council considered action on the deliberations that had occurred during Chief Judge Oliver's performance evaluation regarding the structure of the municipal court, but it was ultimately

---

[19] The plaintiff's objections to DSMF ¶¶ 24-25 are sustained because the record citations do not support the proposed facts. (*See* Oliver Dep. [47-1] 96-100 & Ex. 5 [47-6] (testifying that she had seen a similar looking letter "somewhere" but did not recall when she saw it, the date of the letter, or whether she read it).)

[20] The defendant's hearsay objection to PSMF ¶ 60 is overruled because that proposed fact can be reduced to admissible evidence at trial. *See Macuba*, 193 F.3d at 1323.

14

tabled for further deliberations.  (DSMF ¶ 22.)  Councilmember Shropshire made the motion to place "Court Administration" on the agenda that day, which included a discussion about changing the plaintiff's reporting line to report directly to Chief Judge Oliver.  (PSMF ¶ 75.)

On January 29, 2024, the City Council voted to restructure the function of the court administrator position to be under the chief judge instead of the city manager by a vote of 6-1:  Councilmember Eric Friedly provided the motion for the action to be considered, Councilmember LaTonya Martin Rogers provided the second, with Councilmembers Friedly, Martin Rogers, Carrie Ziegler, Tremayne Mitchell, T. Starr Cummings, and Shropshire voting in favor of the motion and Councilmember Joshua Butler voting against it.  (DSMF ¶ 28; PSMF ¶ 92.)[21]  The City Council also voted to provide Chief Judge Oliver with a salary raise.  (DSMF ¶ 29, as modified by R-DSMF ¶ 29.)

In their declarations, Councilmembers Friedly, Ziegler, Rogers, Mitchell, and Cummings stated that they were not aware the plaintiff had met with the EEOC. (DSMF ¶ 31, as modified by R-DSMF ¶ 31; DSAF ¶ 7.)  According to Mr. Weems,

---

[21] The plaintiff's objection to DSMF ¶ 28 is overruled because the record citation supports the proposed fact.

however, one week earlier at a specially called meeting on January 23, 2023, he briefed the City Council regarding the status of pending investigations. (Weems Decl. [44-9] ¶ 28.) He was then excused and 30 minutes later the City Council informed Mr. Weems that he was terminated. (*Id.* ¶ 28.)

Ms. Riley left the January 29, 2024 meeting with Chief Judge Oliver, who told her, "I didn't want the power back, but now I have a decision to make." (Riley Decl. [44-11] ¶¶ 2, 13.) Ms. Riley understood the statement to mean that, "the change in reporting lines came with an expectation that Ms. Propst[] would most likely be terminated." (*Id.* ¶ 13.)

### E.    The Plaintiff's Termination

Chief Judge Oliver lacked knowledge of the plaintiff's alleged interaction with the EEOC on or around January 25, 2024. (DSMF ¶ 27.)[22] When asked in her deposition why she terminated the plaintiff, Chief Judge Oliver gave the following response:

> Well, based on the communication that she and I had been having and the direction that I think the court should go in, I didn't think she would be a good fit for moving forward. And I didn't think the two of us would be able to work together to advance the court. Ms. Propst had told me after we had had discussions about what the city council

---

[22] The plaintiff's objection to DSMF ¶ 27 is overruled as argumentative and because the record citation supports the proposed fact.

wanted to do, that she did not want to work for me.  And that if she left, everyone else would leave too, and so I evaluated that and decided that it was just not going to be in the best interest of the court for us to move forward together in that regard.  There was some things that kind of pushed that a little bit more to fruition in that communication, and once I realized we weren't going to be able to communicate well in that regard, I just didn't think it was going to be a good fit for her to stay in the way that I wanted to move the court forward with someone that I had to be able to communicate with and make sure that we're not having any difficulties in doing so.

(Oliver Dep. [47-1] 56-57.)[23]

Chief Judge Oliver believed that she and the plaintiff would not work well together moving forward, after having experienced what she perceived to be personality clashes or professional disagreements over a few instances regarding court operations.  (DSMF ¶ 35, as modified by R-DSMF ¶ 35.)  When asked in her deposition for an example of the women not getting along in the past, Chief Judge Oliver responded as follows:

So she's in control of the budget.  I'm letting her know, I need to ask for more money for the judges, and she specifically said I'm not putting that in the budget, or I'm trying to get raises for the two staff members that I have, that's not taken care of either, so I have to go around her, go to city – not to the city council but to the city manager to get those things done.  So I'm asking, hey, can I see the budget, I

---

[23] The plaintiff's objection to DSMF ¶ 34 is sustained because the proposed fact does not accurately represent Chief Judge Oliver's response to the question of why she terminated the plaintiff.  To avoid confusion, the Court quotes her response to that question.

> need to have a discussion, so, no, I'm not seeing the budget, I'm not giving you the budget.  So there's a way to do things and that's just not the way it was, and I felt like I had been slighted in that regard because I needed to do my job as well.  My job is to report to mayor and council, and I need to have all of the tools I need to do that, and I didn't feel like I had that level of support.

(Oliver Dep. [47] 51-52; *see also* DSMF ¶ 36.)[24]  The plaintiff recollects this instance as, "one minor difference of opinion regarding the timing of when Judge Oliver would receive a printed copy of the budget; however, this was promptly resolved without conflict or further discussion." (Propst Am. Decl. [44-8] ¶ 19; *see also* R-DSMF ¶ 36.)[25]

Chief Judge Oliver described a second example when she believed the plaintiff failed to cooperate with her involving the delivery of W-2 forms.  (DSMF ¶ 37.)  She recounted the incident as follows:

---

[24] In order to address the women's differing recollections of their alleged conflicts, the Court directly quotes their testimony.  When considering the defendant's Motion for Summary Judgment, the Court must credit the plaintiff's version of events.  Likewise, the Court must credit the defendant's version when ruling on the plaintiff's Amended Cross-Motion for Summary Judgment.

[25] The defendant's objections to PSMF ¶¶ 63-66, 89-90 are sustained.  As already explained, the Court must view the record in the light most favorable to the defendant when ruling on the plaintiff's Amended Cross-Motion for Summary Judgment.  Therefore, the plaintiff's recollection of her relationship with Chief Judge Oliver and any previous differences of opinion between the women cannot prevail in the face of opposing testimony when ruling on that motion.

Specifically, there was some communication near the end where I asked the question she told me submit e-mails saying hey, your W-2s are here, and I said okay. She asked me how I wanted to get them, did I want to pick them up, or did I want her to mail them. Well, I live two miles from the courthouse so mailing it didn't make sense to me. And so I said, you know, I'll pick it up, just put it on my desk and her response was I don't have access to your office, which I knew was not the case. My office door was not working properly. She was in control of who had access, and she had access to the office and she said she didn't, and I said okay. And she said, well -- I told her I'm coming to the meeting tonight for city council, and she said well, me and the staff are coming as well. I'll bring it with me. When we get there, I asked her about it, and she said, no, ma'am, I don't have it. And I said, okay, so as we're leaving, I asked her again, did she leave it on the desk because that's my assumption and her response is, no, I put it in the safe. Okay. Well, that snippet response, that's not something that's going to work with us trying to move forward. I still was not in a position at that time to make any decision. The next day I sent her a message and I said, hey, are you in court, and it was only to have a discussion to say, hey, let's see if we can work this out again, and instead of giving a normal response it was, like, every day. And I was just like at this point, how do we move forward if we can't communicate. I need someone that's going to be working with me to move the Court forward in a positive and advanced way, and I didn't see that was going to be the case with Ms. Propst. I just didn't see it happening.

(Oliver Dep. [47-1] 58-60; *see also* DSMF ¶ 37.)[26] The plaintiff recollects that she

neglected to bring the form to the meeting and offered to return to the office and

---

[26] The defendant's objection to PSMF ¶ 67 is sustained because the record citation does not support the proposed fact. The Court notes that the substance of that proposed fact is included in the paragraph above.

19

retrieve it, but Chief Judge Oliver declined, stating that was not necessary because there was no urgent need for it.  (Propst Am. Decl. [44-8] ¶ 61; *see also* R-DSMF ¶ 37; PSMF ¶ 69.)

On January 29, 2024, Chief Judge Oliver sent the plaintiff a message asking if she was in the office and the plaintiff responded:  "every day."  (Oliver Dep. [47-1] 73.)  Chief Judge Oliver testified that he plaintiff's response "made it clear" that they could not move forward together and she decided to terminate the plaintiff at that point.  (*Id.* at 71.)  Chief Judge Oliver provided context to the "every day" reference, explaining that during COVID she worked from home, while the plaintiff was in the office and the two previously "had discussions about every day, and so that was yet another snippet response and I understood what she said."  (*Id.* at 74.)  According to Chief Judge Oliver, the text showed her that the women would not be able to communicate or work together and interpreted it as an indication that "[the plaintiff] did not want to work under [her] administration."[27]  (*Id.*; *see also* DSMF ¶¶ 38-39.)[28]

---

[27] The defendant's objection to PSMF ¶ 53 is sustained because the proposed fact is not supported by a record citation.

[28] The plaintiff's objections to DSMF ¶¶ 38-39 are overruled as argumentative because the record citation supports the proposed facts.

On January 30, 2024, at approximately 10:00 a.m., Judge Oliver terminated the plaintiff in a meeting with Michele Hebert from human resources present. (DSMF ¶ 33.)[29]   Multiple court staff members testified and provided sworn statements supporting that Chief Judge Oliver admitted that she was compelled to terminate the plaintiff by the City Council.  (PSMF ¶ 93 (citing Riley Decl. [44-11]; Fain Decl. [44-12]; Dabney Decl. [44-10]).)[30]

Micheala Fain, a court clerk with the defendant, learned of the plaintiff's termination the following day during a meeting held by Chief Judge Oliver to address the situation.  (Fain Decl. [44-12] ¶¶ 2, 13.)  According to Ms. Fain, Chief Judge Oliver stated that the plaintiff was, "no longer with us, and there are two sides to every story. . . that she did not want to terminate Ms. Propst but the [c]ity council made her do it."  (Fain Decl. [44-12] ¶ 13.)  Likewise, attorney Austin Dabney has averred that Chief Judge Oliver told him a few days after the plaintiff's termination "that she did not want to fire Ms. Propst, but that her 'hands were tied because the City Council wanted her gone.'"  (Dabney Decl. [44-10] ¶ 15.)

---

[29] The defendant's objection to PSMF ¶ 93 is sustained because the record citation does not support the proposed fact.

[30] The defendant's hearsay objection to PSMF ¶ 93 is overruled.  Because the referenced persons are available to testify, the proposed fact can be reduced to admissible evidence and the Court may consider.  *See Macuba*, 193 F.3d at 1323.

Additionally, according to the plaintiff, Councilmember Butler (the only dissenting vote) told her during a February 1, 2024 phone call that Councilmember Shropshire lobbied for her termination in an executive session and that she was "fired because [she] filed an EEOC complaint." (Propst Dep. [39-1] 215-19; Propst Am. Decl. [44-8] ¶ 49; PSMF ¶ 55.)[31]

## II.   STANDARD OF REVIEW

A "court shall grant summary judgment if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment "bears the initial burden of informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." *Rice-Lamar v. City of Fort Lauderdale, Fla.*, 232 F.3d 836, 840 (11th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Those materials may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only),

---

[31] The defendant's hearsay objection to PSMF ¶ 55 is overruled. Because Councilmember Butler is available to testify, the proposed fact can be reduced to admissible evidence and the Court may consider it. *See Macuba*, 193 F.3d at 1323. Furthermore, the defendant has not directly refuted the proposed fact.

admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

The non-moving party is then required "to go beyond the pleadings" and present competent evidence "showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If in response the non-moving party does not sufficiently support an essential element of the case as to which he or she bears the burden of proof, summary judgment is appropriate. *Rice-Lamar*, 232 F.3d at 840. "In determining whether genuine issues of material fact exist, [the Court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party." *Id.* (citing *Anderson*, 477 U.S. at 255).

In deciding a summary judgment motion, the Court's function is not to resolve issues of material fact, but rather to determine whether there are any such issues to be tried. *Anderson*, 477 U.S. at 250. The applicable substantive law will identify those facts that are material. *Id.* at 248. Facts that are disputed, but which

do not affect the outcome of the case, are not material and thus will not preclude the entry of summary judgment.  *Id.*  Genuine disputes are those in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  For factual issues to be "genuine," they must have a real basis in the record.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  When the record as a whole could not lead a rational trier of fact to find for the non-movant, there is no "genuine issue for trial."  *Id.* at 587 (citing *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## III.    DISCUSSION

The undersigned **REPORTS** that neither party is entitled to summary judgment on the plaintiff's remaining claims because their opposing versions of events require a fact finder to determine whom to credit.  When viewing the facts in the light most favorable to the plaintiff, a reasonable jury could find the defendant's treatment of her violated Title VII, the First Amendment, and the Georgia Whistleblower Act.  However, the opposite is true if the defendant's version of the events is credited.

Either Councilmember Shropshire demanded the plaintiff remove her relative's fine and then retaliated against her for reporting the inappropriate call by spearheading a campaign to restructure the plaintiff's position and pressure Chief

Judge Oliver to then fire her; or Councilmember Shropshire simply inquired about a relative's experience in virtual court and voted with the majority of the City Council to properly restructure the municipal court, after which the plaintiff's poor attitude with her new supervisor led to her termination. The undersigned applies the parties' opposing versions of the events to the remaining claims in turn below.

### A.      Count I:  Title VII Participation Clause Claim

In Count I, the plaintiff now proceeds only on her Title VII participation clause and related retaliatory harassment claims, alleging the defendant retaliated against her with adverse working conditions culminating in termination after she engaged with the EEOC.  (*See* Compl. [1] ¶¶ 59-66; Order of Nov. 19, 2024 [16] (dismissing opposition clause and related retaliatory harassment claim).)

Title VII's "participation clause" protects an employee who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Likewise, employees are protected from a retaliatory hostile work environment due to protected activity. *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020). A plaintiff may prove retaliation with direct or circumstantial evidence. *See Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999).  However, to ultimately succeed on a retaliation claim, the employee must show that her

"protected activity was a but-for cause of the alleged adverse action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

"Evidence is direct when it is sufficient to prove discrimination without inference or presumption." *Clark*, 990 F.2d at 1223.  Thus, "only the most blatant remarks, whose intent could be nothing other than to discriminate [], . . . constitute direct evidence of discrimination." *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989).  Claims based on circumstantial evidence are considered under either the *McDonnell Douglas* burden-shifting framework or the convincing mosaic analysis.  *See Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1340-42 (11th Cir. 2023) (addressing both standards in the Title VII retaliation context).

With regard to the defendant's Motion for Summary Judgment, the plaintiff can proffer direct evidence that she was terminated in retaliation for participating in an EEOC investigation.  The defendant's argument that the City Council and a judge were not mere dupes for one person's desire to retaliate is not well taken. (*See* Def.'s Br. [41-1] 15-16.)  Again, Mr. Weems stated that he briefed the City Council regarding all ongoing investigations at a specially called meeting on January 23, 2023, and Councilmember Butler (who was the only dissenting vote at the January 29, 2024 meeting) allegedly told the plaintiff that Councilmember Shropshire lobbied for her termination in an executive session and that she was

26

terminated because of her EEOC activity.  Moreover, the plaintiff has proffered the testimony of multiple people to whom Chief Judge Oliver allegedly admitted that she simply complied with the City Council's wishes when terminating the plaintiff. *See Hammett v. Sec'y, Dep't of Homeland Sec.*, 488 F. App'x 405, 406 (11th Cir. 2012) (describing the cat's paw theory of liability as "where the decisionmaker is not motivated by a retaliatory animus but is influenced by a non-decisionmaker who is so motivated"); *see also Brown v. Bd. of Regents for Univ. Sys. of Ga.*, No. 4:21-CV-147, 2023 WL 3656923, at *7 n.5 (S.D. Ga. May 25, 2023) (concluding at the summary judgment stage that the so-called cat's paw theory of liability may apply in participation clause retaliation cases).  Moreover, viewing the evidence in the light most favorable to the plaintiff, the defendant cannot rely on the women's past interactions to establish an alternative reason for her termination.  Therefore, a reasonable jury could find in favor of the plaintiff on her Title VII claims and the defendant's Motion for Summary Judgment on Count I must be **DENIED**.[32]

---

[32] Even assuming the plaintiff cannot produce direct evidence, the above facts would easily satisfy both the *McDonnell Douglas* framework and convincing mosaic standard.  Again, a reasonable jury could credit the plaintiff's version of events and find that Chief Judge Oliver terminated the plaintiff at the behest of the City Council because of her EEOC activities.  Therefore, the defendant is not entitled to summary judgment on Count I regardless.

Conversely, with regard to the plaintiff's Amended Cross-Motion for Summary Judgment on Count I, the Court must consider whether she can prevail on circumstantial evidence alone considering the defendant's version of events. To state a prove a retaliation claim in that manner, the plaintiff must establish that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected expression and adverse action." *Stewart v. Jones Utility & Contracting Co. Inc.*, 806 F. App'x 738, 743 (11th Cir. 2020). It is undisputed that the plaintiff can establish the first two elements.

First, the plaintiff's phone call to the EEOC, participation in an interview, and subsequent filing of a Charge all constitute protected activity. *See EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (protected activity includes "proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC"). Second, termination constitutes an adverse action that "might deter a reasonable employee from pursuing a pending charge of discrimination or making a new one." *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008).

However, the parties dispute whether the plaintiff can establish causation. To do so, she "must show that the decision-maker was aware of the protected

conduct." *Uppal v. Hosp. Corp. of Am.*, 482 F. App'x 394, 397 (11th Cir. 2012). This is so because "a decision maker cannot have been motivated to retaliate by something unknown to him." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). The decision-maker's awareness of protected activity can be established by circumstantial evidence. *Id.*

If the defendant's version of events is credited, Chief Judge Oliver was the sole decision maker regarding the plaintiff's termination and knew nothing of the plaintiff's EEOC activities. Rather, the judge unequivocally testified that she terminated the plaintiff for being difficult to work with and giving the impression of not wanting to work under her administration. Because a reasonable jury could indeed credit the defendant's version of events, the plaintiff cannot establish a causal link between her protected activity and the adverse employment action. Without the ability to support even a prima facie case of retaliatory termination, the plaintiff is not entitled to summary judgment as to Count I and her Amended Cross-Motion for Summary Judgment also must be **DENIED**.

**B.    Count II:  First Amendment Claim Via 42 U.S.C. § 1983**

In Count II, the plaintiff alleges the defendant violated her First Amendment rights by terminating her in retaliation for engaging in protected speech. (Compl. [1] ¶¶ 67-71.)

The First Amendment prevents the government from "abridging the freedom of speech." U.S. Const. amend. I. This includes freedom from "'retaliatory actions'" of government officials "for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U. S. 250, 256 (2006)). To state a prima facie First Amendment retaliation case, a plaintiff must show three elements: (1) she engaged in protected activity; (2) she suffered an adverse action; and (3) there is a causal connection between the protected activity and the adverse action. *See Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). If a plaintiff establishes these elements, the government may then seek to prove it would have made the same decision even if the plaintiff never engaged in protected activity. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

With regard to the defendant's Motion for Summary Judgment, which requires viewing the facts in the light most favorable to the plaintiff, the Court's determination that the plaintiff's various communications regarding her recollections of the August 28, 2023 phone call constitute speech and enjoy the full protection of the First Amendment because they do not fall under an unprotected category. *See Lane v. Franks*, 573 U.S. 228, 240 (2014) ("The critical question under *Garcetti* [*v. Ceballos*, 547 U.S. 410 (2006),] is whether the speech at issue is

itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."); *Alves v. Bd. of Regents of the Univ. Sys. of Ga.*, 804 F.3d 1149, 1163 (11th Cir. 2015) ("*Lane* reinforces *Garcetti*'s holding that a public employee may speak as a citizen even if his speech involves the subject matter of his employment and clarifies the critical inquiry for retaliation claims.").

Expressing concerns about being targeted by a councilmember who insisted the plaintiff "fix" a court fine imposed on a family member is not a routine operational issue a court administrator would "ordinarily" discuss and therefore constitutes protected activity. *See Lane*, 573 U.S. at 240. Indeed, as the plaintiff undisputedly explained to Councilmember Shropshire, she lacked authority over court fines. Moreover, by their nature, public employees' complaints of government malfeasance are often considered citizen speech because they will rarely be an ordinary part of their jobs. Notably, "a core concern of the first amendment is the protection of the 'whistle-blower' attempting to expose government corruption" discovered through her public employment. *Bryson v. City of Waycross*, 888 F.2d 1562, 1566 (11th Cir. 1989) (involving public employee's complaint to the city manager); *see also Lane*, 573 U.S. at 240 (noting this is the "very kind of speech necessary to prosecute corruption by public officials" for which the First Amendment protects).

31

Furthermore, as discussed *supra* Part III.A, a reasonable jury could find that the plaintiff was terminated solely in retaliation for reporting the interaction with Councilmember Shropshire and pursuing recourse in that regard with both the defendant and the EEOC.  Therefore, a reasonable jury could find in favor of the plaintiff on her First Amendment claim and the defendant's Motion for Summary Judgment must be **DENIED** as to Count II**.**

However, with regard to the plaintiff's Amended Cross-Motion for Summary Judgment, viewing the evidence in the light most favorable to the defendant prevents the plaintiff from establishing a prima facie First Amendment retaliation case because a reasonable jury could find no causal connection between her protected activity and termination.  Chief Judge Oliver was adamant in her testimony that she did not delve into the details of the phone call between the plaintiff and Councilmember Shropshire, had no knowledge of the plaintiff's EEOC activities, and fired the plaintiff solely because of her bad attitude and the judge's belief that she would be difficult to work with under the new municipal court structure.  Without the ability to support a prima facie case of First Amendment retaliation, the plaintiff's Amended Cross-Motion for Summary Judgment must be **DENIED** as to Count II**.**

### C.   Count IV:  Georgia Whistleblower Claim

In Count IV, the plaintiff alleges the defendant terminated her in retaliation for reporting noncompliance with a regulation, rule, or law in violation of the Georgia Whistleblower Act, O.C.G.A. § 45-1-4.  (Compl. [1] ¶¶ 76-82.)

The Georgia Whistleblower Act prohibits public employers from retaliating against employees "for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency, unless the disclosure was made with knowledge that the disclosure was false or with reckless disregard for its truth or falsity" or "for objecting to, or refusing to participate in, any activity, policy, or practice of the public employer that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation." O.C.G.A. § 45-1-4(d)(2)-(3).

Such claims generally are evaluated under the *McDonnell-Douglas* burden-shifting framework used in Title VII retaliation cases.  *Lamar v. Clayton Cnty. Sch. Dist.,* 605 F. App'x 804, 806 (11th Cir. 2015) (citing *Forrester v. Ga. Dep't of Hum. Servs.*, 708 S.E.2d 660, 665 (Ga. Ct. App. 2011)).  Following that framework, a whistleblower retaliation claim requires the plaintiff to establish the following prima facie elements:  (1) a public employer; (2) the employee disclosed a violation of or noncompliance with a law, rule, or regulation to a supervisor or agency; (3)

the employee was subjected to an adverse employment decision as an act of retaliation; and (4) a causal link between the disclosure and the adverse employment decision. *Lamar*, 605 F. App'x at 806; *Coward v. MCG Health, Inc.*, 802 S.E.2d 396, 399 (Ga. Ct. App. 2017). If the employee does so, the employer must articulate a legitimate, non-retaliatory reason for the adverse employment action. *See Lamar*, 605 F. App'x at 806. The plaintiff must then demonstrate that stated reason to be pretext. *See id.*

In support of its Motion for Summary Judgment, the defendant argues that the plaintiff's primary concern regarding the August 28, 2023 phone call was that she believed it to be inappropriate under the City's personnel policies—which "is not whistleblowing." (Def.'s Br. [41-1] 24 (internal quotation marks omitted).) However, viewing the facts in the light most favorable to the plaintiff, a reasonable jury could find that her primary concern was that Councilmember Shropshire "was asking me to do something illegal and unethical." (Propst Am. Decl. [44-8] ¶ 7.) Notably, the plaintiff cites O.C.G.A. § 15-21-134 in support of her concern, which states that "[a]ny person whose duty it is to collect and remit [court fines] who refuses to so remit shall be guilty of a misdemeanor." (*See* Propst Am. Decl. [44-8] ¶ 7 (citing O.C.G.A. § 15-21-134.))

34

Thus, the Title VII analysis set forth *supra* Part III.A also prevails against the defendant's Motion for Summary Judgment with regard to the plaintiff's whistleblower claim.  It is undisputed that the defendant is a public employer and employed the plaintiff during the events at issue.  Moreover, crediting the plaintiff's version of the phone call, Councilmember Shropshire demanded she "fix" a relative's court fine, which would violate a Georgia law which mandates the collection of such court fines—clearly an essential function of her job as court administrator.  Likewise, as the undersigned has repeatedly explained, a reasonable jury could find that the plaintiff was terminated in retaliation for refusing that request and the plaintiff has proffered evidence which directly and unequivocally links those two events.  Finally, viewing the facts in the plaintiff's favor, a reasonable jury could find Chief Judge Oliver's statements that she terminated the plaintiff because of her poor attitude to be mere pretext in the face of multiple declarations averring that the judge repeatedly stated that she fired the plaintiff at the direction of the City Council.  Therefore, the defendant's Motion for Summary Judgment also must be **DENIED** as to Count IV.

As the undersigned has repeatedly explained, the plaintiff's Amended Cross-Motion for Summary Judgment fails under a similar rationale—because viewing the evidence in the light most favorable to the defendant, the plaintiff cannot

establish a causal connection between her disclosures regarding the phone call and her termination. Again, a reasonable jury could credit Chief Judge Oliver's testimony that she knew little about the phone call other than that the plaintiff was "cussed out" and had no knowledge of her other activities but terminated the plaintiff because she was difficult to work with and would not support the judge's administration. Crediting the defendant's version of the events means the plaintiff cannot establish a violation of the Georgia Whistleblower Act and her Amended Cross-Motion for Summary Judgment must be **DENIED** as to Count IV.

## IV.    CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS** that both the defendant's Motion for Summary Judgment [41] and the plaintiff's Amended Cross-Motion for Summary Judgment [58] be **DENIED** and the plaintiff proceed to trial on her remaining claims set forth in Counts I, II, and IV.

The Clerk is **DIRECTED** to terminate the referral to the undersigned Magistrate Judge.

**SO RECOMMENDED**, this 13th day of July, 2026.

_____
JOHN H. RAINS IV
UNITED STATES MAGISTRATE JUDGE